**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marc W. Kane, | No. CIV 13-2357-TUC-JGZ (LAB) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

The court finds the final decision of the Commissioner is not supported by substantial evidence and free from legal error. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The ALJ improperly resolved the case by applying the social security grids at step 5 of the disability analysis. The case should be remanded for further proceedings.

PROCEDURAL HISTORY

Kane filed his application for disability insurance benefits, child's disability benefits, and supplemental security income on December 27, 2010. (Tr. 22) He alleged disability beginning

on November 17, 2010, due to "fractured pelvis and multi trauma due to car accident." (Tr. 22, 176) His claim was denied initially (Tr. 112, 116) and upon reconsideration (Tr. 121, 124, 127). Kane requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Laura Speck Havens on May 24, 2012. (Tr. 39) In her decision, dated September 21, 2012, the ALJ found Kane was not disabled because he could perform nearly the full range of light work. (Tr. 29)

Kane appealed and submitted additional exhibits, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-6); *see Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Kane subsequently filed this action appealing the Commissioner's final decision. (Doc. 1) He argues the ALJ erred by finding he was not disabled by using the social security grids. (Doc. 17) He further argues the ALJ did not properly assess the opinions of the examining physician, Hassman, and the treating physician, Serfino. (Doc. 17)

Claimant's Work History and Medical History

Kane was born in February of 1989. (Tr. 40) He has a high school diploma and two years of college. (Tr. 40) He has no past relevant work. (Tr. 42) He alleges disability beginning on November 17, 2010, due to "fractured pelvis and multi trauma due to car accident." (Tr. 22, 176)

Mental Impairments

In June of 2012, Kane was examined by Machelle Martinez, Ph.D., for the state disability determination service. (Tr. 522-526) Martinez diagnosed "Depressive Disorder NOS" and Anxiety Disorder NOS." (Tr. 523) She summarized: "concentration was sustained and memory intact . . . [m]ood is mildly depressed and anxious." (Tr. 524)

Martinez completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. 518) She found Kane is mildly impaired in his ability to "understand and remember complex instructions," "carry out complex instructions," and "make judgments

1 on complex work-related decisions." (Tr. 518)  He is mildly impaired in his ability to interact
2 appropriately with the public and with supervisors. (Tr. 519)  He is also mildly impaired in his
3 ability to "respond appropriately to usual work situations and to changes in a routine work
4 setting." (Tr. 519)

Physical Impairments

Kane was injured in a motor vehicle accident in November of 2010. (Tr. 310)  He sustained a fracture of the hip socket and the sacrum.  (Tr. 311)  Screws were surgically implanted to stabilize his pelvis and sacrum. (Tr. 291, 397)

Progress notes from January of 2011 indicate his fracture was healing. (Tr. 402)  He was taking Percocet and Vicodin for pain. *Id.*   He was "given a prescription for physical therapy to begin working on walking and weightbearing as tolerated . . . as well as a prescription for tramadol for pain." *Id.*

Progress notes from March of 2011 indicate Kane "is up doing most of his normal activities." (Tr. 443)  "He still has a little bit of low back discomfort." *Id.*  "The fracture appears well healed." *Id.*  "Dr. Truchan recommended that [Kane] try Naprosyn . . . ." *Id.*  "He will start weaning himself off the Vicodin." *Id.*  "He should not need further pain medication refills." *Id.*

In April of 2011, L. A. Woodard, D.O., reviewed the medical record for the state disability determination service. (Doc. 70)  She concluded Kane's impairments would not last for 12 months and were therefore "non-severe." (Tr. 70)

In May of 2001, Bobby Dezfuli, M.D., stated Kane is "doing well with minimal complaints." (Tr. 480)  "He has occasional upper back pain but no lower back pain." *Id.*  "He can go back to normal activities." *Id.*  "He has been instructed to limit any kind of running." *Id.*  Lisa M. Truchan, M.D., concurred stating "[Kane] is unrestricted at this point." *Id.*  In December of 2011, Kane had surgery to remove his pelvic screws. (Tr. 493, 497)

In May of 2012, Leonardo Serfino, M.D., Kane's primary care physician, completed a Medical Work Tolerance Recommendations form. (Tr. 516-517)  He opined that Kane was

1  limited to part-time sedentary work. (Tr. 516). Kane could stand for one hour at a time and two
2  to three hours per day. *Id*. He could sit for one hour at a time and three hours per day. *Id*. He
3  could walk for 15 minutes at a time and for 30 minutes per day. *Id*. He would have to change
4  positions frequently during the day. *Id*. He should not climb ladders and should only climb
5  three flights of stairs per day. *Id*. He could drive for 30 minutes at a time and for 60 minutes
6  per day. *Id*. He would be expected to miss four to five days per month due to his condition.
7  *Id*. He must avoid bending and should only occasionally crouch, kneel, or squat. (Tr. 547)

In July of 2012, Kane was examined by Jeri B. Hassman, M.D., for the state disability determination service. (Tr. 527) Kane stated "the main reason he is not going back to college is more depression than pain." *Id.* "He does get some pain in the left hip area at times, especially with prolonged sitting and standing." *Id.* "He does get occasional aching pain in the mid back and across his low back." *Id.* Hassman diagnosed "Status post pelvic fracture and what sounds like a left acetabular [hip socket] fracture from a motor vehicle accident in November 2010, and status post ORIF [open reduction internal fixation] consisting of two screws traversing the sacroiliac joints and upper sacrum and status post removal of hardware; Depression since the motor vehicle accident, currently on Lexapro." (Tr. 529)

Hassman completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 530) She opined he could lift or carry up to 10 pounds frequently and up to 20 pounds occasionally. *Id.* He could sit, stand, or walk for one hour at a time. *Id.* He could sit for six hours total per day, stand for three hours total per day, and walk for three hours total per day. (Tr. 531) He could frequently operate foot controls with his right foot and occasionally with his left foot. (Tr. 533) He could occasionally climb stairs and ramps, climb ladders or scaffolds, balance, kneel, crouch, or crawl. (Tr. 534) He could occasionally tolerate unprotected heights, moving mechanical parts, extreme cold, extreme heat, or vibrations. (Tr. 535)

Hearing Testimony

On May 24, 2012, Kane appeared with counsel at a hearing before Administrative Law Judge (ALJ) Laura Speck Havens. (Tr. 39)

Kane testified he was involved in a motor vehicle accident on November 17, 2010. (Tr. 41-42) He suffered a fractured sacrum and pelvis. *Id.* Kane withdrew from the University of Arizona after the accident to accommodate his recovery. (Tr. 50) He attempted to return to school in August of 2011, but he found it was too stressful. (Tr. 50-51) He also had difficulty sitting in auditorium seats for more than 20 minutes. (Tr. 51-52)

Kane can sit for two hours at a stretch and stand for an hour. (Tr. 52) Once he drove to San Diego, which took him approximately seven hours including breaks. (Tr. 44) He sometimes feels anxious if he is driving and a car approaches him on the right side. (Tr. 48-49) He estimated he could lift 80 pounds. (Tr. 47)

Kane lives with his parents most of the time, but he also shares a house in Tucson with roommates. (Tr. 42) He usually wakes between 9:30 a.m. and 10:00 a.m. (Tr. 43) He can cook, wash dishes, mop or sweep, do laundry, and go grocery shopping. (Tr. 43) He enjoys playing with his new dog. (Tr. 43, 49) He uses the computer two hours per day. (Tr. 44) He watches TV one hour per day. (Tr. 44) He plays soccer once a month. (Tr. 49) He goes rollerblading every two weeks. *Id.*

Kane explained that he has difficulty dealing with stress. (Tr. 51) He takes Xanax to help him sleep. (Tr. 50) He sleeps six or seven hours per night. (Tr. 45)

Kane's father testified that Kane used to be a very hard working student before the accident. (Tr. 54) Afterward, he was no longer the same person. (Tr. 54) He has anxiety and does not sleep much. (Tr. 55) He avoids people and will not return his father's phone calls. (Tr. 55)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of

whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 6 -

C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-exertional limitations prevent the claimant from performing the full range of work in any exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

The ALJ's Findings

At step one of the disability analysis, the ALJ found Kane "has not engaged in substantial gainful activity since November 17, 2010, the alleged onset date . . . ." (Tr. 24). At step two, she found Kane "has the following severe impairments: status post pelvic fracture . . . ." (Tr. 24) At step three, the ALJ found Kane's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 25)

The ALJ then analyzed Kane's residual functional capacity (RFC). She found that Kane "has the residual functional capacity to perform light work . . . except the claimant is limited to standing and walking for a total of three hours out of an eight-hour workday." (Tr. 25) He "is able to sit for six hours total out of an eight-hour work day." *Id*. He "is able to frequently

1 engage in fine and gross manipulation." *Id*. He "may occasionally climb stairs, ramps, ladders
2 or scaffolds, or balance, kneel, crouch or crawl." *Id*. He "may frequently stoop . . . work at
3 unprotected heights, around moving machinery, or in conditions of extreme cold, heat or
4 vibrations." *Id*. He "may frequently operate a motor vehicle, work in conditions of humidity
5 or wetness or in proximity to dust, fumes, odors or other pulmonary irritants." *Id*.

6 At step four, the ALJ found Kane has no past relevant work. (Tr. 28)  At step five, the
7 ALJ found Kane was not disabled using grid rule 202.20, which assumes the ability to perform
8 light work, a "younger individual"(age from 18 through 49), high school graduate or more, and
9 no previous work experience. (Tr. 29) Accordingly, she found Kane was not disabled "from
10 November 17, 2010, through the date of this decision. . . ." (Tr. 29)

STANDARD OF REVIEW

13 An individual is entitled to disability benefits if he or she demonstrates, through
14 medically acceptable clinical or laboratory standards, an inability to engage in substantial
15 gainful activity due to a physical or mental impairment that can be expected to last for a
16 continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A]
17 claimant will be found disabled only if the impairment is so severe that, considering age,
18 education, and work experience, that person cannot engage in any other kind of substantial
19 gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.
20 1993).

21 The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
22 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is
23 not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).
24 Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept
25 as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a
26 preponderance." *Id.*

27 "Where evidence is susceptible to more than one rational interpretation, the ALJ's
28 decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider

the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The ALJ may reject a treating physician's uncontradicted opinion only if she sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion only if she provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

Kane argues first that the ALJ's failure to consult a vocational expert at step 5 of the disability analysis was error. The court agrees and recommends the case be remanded for further proceedings.

The ALJ found that Kane has "the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(b) except the claimant is limited to standing and walking for a total of three hours out of an eight-hour workday." (Tr. 25) The ALJ concluded Kane's "additional limitations have little or no effect on the occupational base of unskilled light work." (Tr. 29) Accordingly, the ALJ proceeded to deny Kane's claim based solely on the grids. (Tr. 29)

An ALJ may deny a claim based solely on the grids only if the claimant can perform the full range of jobs within a specified exertional category – here, light work. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Kane, however, cannot perform a full range of jobs in this category.

Light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(c), 416.967(b). "To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." *Id*. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately six hours of an 8-hour workday." SSR 83-10; 1983 WL 31251, * 6.

Kane, however, "is limited to standing and walking for a total of three hours out of an eight-hour workday." (Tr. 25) To be clear, the court interprets the ALJ as saying Kane's standing and walking, taken together, must last for no more than three hours out of an eight-hour day. For the remaining five hours, Kane presumably must sit. Kane therefore is limited to less than the full range of light work, and the ALJ was required to consult a vocational expert to deny his claim. *See, e.g., Johnson v. Astrue*, 2010 WL 724393, 4 (M.D.Fla.2010) ("The ALJ's finding in the RFC regarding Plaintiff's ability to stand and walk for two to three hours per day precluded a finding that Plaintiff can perform a full range of light work.").

- 10 -

The Commissioner interprets Kane's RFC differently. The Commissioner argues the RFC as described by the ALJ limits Kane to three hours of walking *plus* three hours of standing in an eight-hour work day. This reading, the Commissioner argues, is preferred because this is the limitation given by the examining consultant, Hassman, and the ALJ stated she gave Hassman's opinion "great weight." (Tr. 27) Hassman did limit Kane to three hours of standing total and three hours of walking total. (Tr. 531) The ALJ, however, did not say that in her decision. (Tr. 25)

Hassman also opined that Kane could only sit or stand or walk for one hour at a time without interruption. (Tr. 531) The ALJ apparently rejected this part of Hassman's opinion because it does not appear in the RFC. If the ALJ could reject one portion of Hassman's opinion, she could reject another. Accordingly, the fact that the ALJ gave "great weight" to Hassman's opinion does not require this court to assume the ALJ adopted Hassman's opinion as to the total amount of walking and standing that Kane could do in one work day. The court concludes the ALJ did not adopt Hassman's total standing and total walking limitations. Moreover, even if she had adopted this part of Hassman's opinion, Kane still could not perform the full range of light work.

Hassman opined Kane could stand for three hours and walk for three hours. This is not the same as saying Kane could stand or walk for six hours, which is required for a finding that the claimant can perform the full range of light work. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately six hours of an [eight]-hour workday." SSR 83-10; 1983 WL 31251, * 6. In other words, light work requires one to stand and walk *in any combination* for a total of six hours. One job might require standing for one hour and walking for five. Another might require standing for five hours and walking for one. Kane can do neither job according to Hassman. He would be limited to only those light work jobs where standing and walking occur in near equal amounts. There is no evidence in the record that this limitation would still allow Kane to perform the full range of light work. The ALJ erred by denying Kane's application using only the grids.

Kane further argues the ALJ erred by discounting the opinion of his treating physician,

- 11 -

1  Serfino. (Tr. 516-617)  The court considers this argument because its resolution could affect
2  this court's recommendation.  The court does not reach Kane's alternate allegations of error.
3       In May of 2012, Leonardo Serfino, M.D., completed a Medical Work Tolerance
4  Recommendations form. (Tr. 516-517)  He opined that Kane was limited to part-time sedentary
5  work. (Tr. 516).  The ALJ, however, gave Serfino's opinion "no weight." (Tr. 27)  She found
6  his opinion was not supported by the medical record or his treatment notes.  Accordingly, she
7  found his opinion lacked objective support and discounted his opinion of disability.
8       Serfino's opinion is contradicted by the opinion of the examining consulting physician,
9  Hassman.  Accordingly, the ALJ must produce specific and legitimate reasons for discounting
10 Serfino's opinion of disability.  The court concludes she has.
11      As the ALJ noted, Serfino's treatment notes are inconsistent with his opinion of
12 disability.  Serfino generally notes "tenderness" in the spinal region, but he documents few
13 symptoms aside from that. (Tr. 436, 508, 509, 539, 540)  He also states that Kane's symptoms
14 are "relieved by pain meds/drugs." (Tr. 508)  Serfino's treatment notes do not support the level
15 of impairment asserted in his opinion.  Accordingly, the ALJ properly discounted Serfino's
16 opinion of disability.
17      Moreover, the ALJ noted that Kane's own testimony indicates his activities of daily
18 living are not as restricted as one would expect from someone unable to work. (Tr. 28)  Kane
19 states for example that he is able to perform his daily activities unassisted. (Tr. 28)  He reports
20 he is able to play soccer once a month and rollerblade every two weeks.  *Id.*  The record does
21 not support Serfino's opinion of disability, and the ALJ was entitled to discount it.  *See, e.g.,*
22 *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) ("Dr. Magsarili's treatment notes
23 provide no basis for the functional restrictions he opined should be imposed on Connett.").
24 //
25 //
26      RECOMMENDATION
27
28

- 12 -

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order REMANDING the plaintiff's claim for further proceedings.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 14 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response.

DATED this 16th day of October, 2014.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge